UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Case No: 22-cr-237 (RBW) |
| v. | : | |
| | : | |
| GEORGE HAYWOOD, | : | Sentencing: December 20, 2022 |
| | : | |
| Defendant. | : | |

UNITED STATES' RESPONSE TO DEFENDANT'S
THIRD SUPPLEMENTAL SENTENCING MEMORANDUM

After betraying the trust placed in him by a corporate director and pleading guilty to a serious felony, the Defendant now asks the Court to impose a sentence of probation so that he can avoid spending even one day in the custody of the Bureau of Prisons. In support of this extraordinary request for special treatment, the Defendant now asks the Court to disregard the Sentencing Commission's recommendation based on the report of a paid expert and his own speculation about sentencing in other insider trading cases. And in a further plea for leniency, the Defendant invites the Court to presume that the Bureau of Prisons will not be able to adequately accommodate his medical needs. The Court should reject these claims.

**ARGUMENT**

I.   Incarceration Would Not Create a Sentencing Disparity

In support of his extraordinary plea for special treatment, the defendant principally presents (at 1-2) an analysis of raw anonymized federal sentencing data prepared by an outside consultant, MCM Data Consulting ("MCM"). Aside from the procedural irregularities of this analysis—for example, the Defendant failed to provide expert notice, the analysis is unsworn, the expert's compensation is unknown, and the author of the analysis has not been subject to cross-examination—the analysis has significant flaws which severely limit its utility. For its statistical

data set, MCM only looked at insider trading cases where the defendant's guideline range was calculated with reference to U.S.S.G. § 2B1.4. (DE 20-1 at 3.) This initial misstep excluded all other cases of insider trading where the offense of conviction was, for example, securities fraud (18 U.S.C. § 1348) or money laundering (18 U.S.C. §§ 1956, 1957) which would be calculated with reference to other guidelines.

MCM then filtered its data set to focus on essentially three criteria—*i.e.,* criminal history at Category I, guilty pleas without mandatory minimum sentences, and no departure for substantial assistance. (DE 20-1 at 4-5.) This process committed at least three additional errors that compromise the results. First, MCM did not focus on cases where the plea agreement, like the one at bar, included a stipulation that the defendant had abused a position of trust warranting a two-point upward adjustment. (DE 6 at 2.) Second, MCM did not focus its analysis on those cases that involved the same guideline calculation as the case at bar because, as MCM notes, there were none. (DE 21-1 at 6.) And, third, because MCM included all guilty pleas without consideration of the specific plea provisions, MCM's resulting data set included cases where the government had agreed to request a guideline variance and cases where an agreed-upon plea had been entered pursuant to Rule 11(c)(1)(C). (DE 20-1 at 4-5.)

But even if all of these analytical flaws were disregarded, MCM's results do not suggest the conclusion that the Defendant reaches (at 2) that a "probationary sentence" is warranted. Indeed, MCM concluded that just over 73 percent of the sentences in their data set involved a period of incarceration.[1] (DE 21-1 at 5.) And when MCM's data is focused on those defendants who have a gain amount between level 8 and level 12—the Defendant is at level 10—over 80

---

[1] MCM's calculation of the "average sentence" in these cases is also problematic because MCM took the unexplained step of using "zero months" for the length of the sentence in any case involving "probation" without reference to whether the case also involved supervised release, home confinement, fines, forfeiture, or restitution.

2

percent of such defendants were sentenced to incarceration.[2]  These facts lend strong support to the conclusion that the Sentencing Commission has appropriately designed the Guidelines so that defendants who substantially profit from illegally trading on material non-public information should be sentenced to incarceration.  *Cf. United States v. Gupta*, 904 F. Supp.2d 349, 355 (S.D.N.Y. 2012) ("[I]nsider trading is an easy crime to commit but a difficult crime to catch.  Others similarly situated to the defendant must therefore be made to understand that when you get caught, you will go to jail.") (Rakoff, J.).

   Although the Defendant points to a series of cases (at 2-3) involving lenient sentences for insider trading convictions which are readily distinguished,[3] the Defendant makes no mention of the case of former-Congressman Chris Collins which was cited in the United States' Sentencing Memorandum.  (DE 15 at 12-13.)  Collins was a Member of Congress from New York who simultaneously served as a member of the Board of Directors for Innate, a biotechnology company.  *United States v. Collins*, No. 18-CR-567 DE 155 ("*Collins* Mem.") at 1 (S.D.N.Y.).  On June 22, 2017, by virtue of his membership in the United States House of Representatives, Collins attended the annual Congressional Picnic at the White House.  (*Collins* Mem. at 2.)  While at the picnic, Collins received news from the CEO of Innate that one of the company's experimental drugs had failed a clinical trial which, Collins knew immediately, would cause the value of Innate stock to plummet.  (*Collins* Mem. at 2.)  In response, Collins immediately called his son, told his son the news, and agreed that his son should sell the son's Innate holdings which

---

[2] MCM's data shows that 21 out of 26 such defendants (80.6 percent) have been sentenced to incarceration.  (DE 21-1 at 5.)

[3] One case involved a Rule 11(c)(1)(C) plea.  *United States v. James Cope*, No. 16-CR-210 (M.D. Tenn. Dec. 9, 2016).  Two of the cases involved gain so small that the Guidelines called for a Zone C sentence.  *United States v. Hamed Ettu*, No. 18-CR-490 (E.D. Pa. July 17, 2019); *United States v. Paul Powers*, No. 19-CR-57 (M.D. Fla. July 8, 2019).  And in the final case, the government agreed to seek a downward guideline variance as a condition of the plea.  *United States v. Sudhakar Bonthu*, No. 18-CR-237 (N.D. Ga. Oct. 19, 2018).

accounted for more than two percent of the company's stock.  (*Collins* Mem. at 2.)  Collins' son then proceeded to sell his shares—more than one million of them—before the adverse news about Innate's clinical test results became public.  (*Collins* Mem. at 3.)  As a result, Collins' son avoided approximately $571,000 in losses. (*Collins* Mem. at 3.)  Following his guilty plea, Collins was sentenced to 26 months of incarceration.  *Collins*, No. 18-CR-567 (S.D.N.Y. Jan. 31, 2020).

Much like the Defendant in the case at bar, Collins was a well-respected member of the public who had enjoyed financial success.  Like the Defendant, Collins was devoted to his community.  Like the Defendant, the gravamen of Collins' crime was a phone call that occurred just moments after Collins had learned material non-public information.  And, like the Defendant, Collins' crime was intended to avoid trading losses that would be borne at least in part by family members.  Thus, here, as in Collins, a period of incarceration is the appropriate sentence.

II.     The Bureau of Prisons Can Accommodate the Defendant's Medical Needs

In a further effort to avoid any period of incarceration, the Defendant has presented letters from three different physicians who are familiar with the Defendant's health and medical conditions.  The Defendant's counsel—not one of his physicians—opines that there is a "common sense reality" that "BOP doctors and nurses … cannot respond promptly to prisoner reports of subjective symptoms."[4]  (DE 21 at 6.)   This is rank speculation.

As the Court is no doubt aware, federal law requires that the Bureau of Prisons consider the mental and medical health needs of inmates when the Bureau designates them to a specific

---

[4] The government has provided a copy of the letters from the Defendant's physicians to the Bureau of Prisons and has requested a written response.  However, the Bureau of Prisons has not provided a written response to the government prior to this filing.

facility. 18 U.S.C. § 3621(b). Indeed, the Bureau has substantial resources for accommodating a wide range of medical needs.[5] These services include preventive health care, such as routine screening for cancer and other infectious diseases.[6] And there is nothing before the Court to suggest that the Bureau of Prisons will fail to provide needed services to the Defendant.

## CONCLUSION

For the foregoing reasons, the government requests that the Court sentence the defendant to a period of incarceration consistent with the Sentencing Guidelines.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        UNITED STATES ATTORNEY

By:    /s/
          Elizabeth Aloi
          John Borchert
          Assistant United States Attorneys
          601 D Street, N.W.,
          Washington, D.C. 20530
          (202) 252-7212 (Aloi)
          (202) 252-7679 (Borchert)
          Elizabeth.Aloi@usdoj.gov
          John.Borchert@usdoj.gov

---

[5] *See, e.g.*, Federal Bureau of Prisons Health Management Resources (available at https://www.bop.gov/resources/ health_care_mngmt.jsp, accessed Dec. 19, 2022).

[6] *See, e.g.*, Bureau of Prisons, Preventive Health Care Screening (July 2022) (available at https://www.bop.gov/resources/pdfs/preventive_health_care_cg_2022.pdf, accessed Dec. 19, 2022).